UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES HOCKING,<br><br>        Plaintiff,<br>    v.<br><br>NANCY A. BERRYHILL,[1]<br>Acting Commissioner of Social Security,<br><br>        Defendant. | No. EDCV 16-2611-AS<br><br>**MEMORANDUM OPINION** |

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED that this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

On December 22, 2016, Plaintiff Charles Hocking ("Plaintiff") filed a Complaint seeking review of the denial of his application for Disability Insurance Benefits (DIB). (Docket Entry No. 1). On May

---

[1] Nancy A. Berryhill is substituted for former Acting Commissioner Carolyn W. Colvin. See Fed. R. Civ. P. 25(d).

23, 2017, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 15, 16). The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 11, 12). On September 7, 2017, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claim. (Docket Entry No. 21).

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Plaintiff, formerly employed as a building inspector and a heating and air conditioning installer, (AR 372), filed his DIB application on May 27, 2010, alleging a disabling condition beginning October 9, 2009, (AR 358), as a result of lower back surgery and lower back pain. (AR 371). On November 16, 2011, an Administrative Law Judge ("ALJ") examined the record and heard testimony from a medical expert ("ME"), Dr. Alanson Mason; a vocational expert ("VE"), Alan Boroskin; and Plaintiff, who was represented by counsel. (AR 82-104). On January 20, 2012, the ALJ issued a written decision denying Plaintiff's application. (AR 113-21). On July 9, 2013, the Appeals Council vacated the ALJ's decision, and remanded the case for further proceedings. (AR 127-30). On March 31, 2015, a different ALJ examined the record and heard testimony from an ME, Dr. Ronald Kendrick; a VE, Dr. Ronald Hatakeyama; and Plaintiff, who was represented by counsel. (AR 42-75). On July 29, 2015, the ALJ denied Plaintiff's application in a written decision. (AR 23-35).

The ALJ applied the requisite five-step process to evaluate Plaintiff's case. At step one, the ALJ found that Plaintiff had not

engaged in substantial gainful activity from his onset date of October 9, 2009, to his date last insured of December 31, 2014. (AR 26). At step two, the ALJ found that Plaintiff had the following severe impairments:

> degenerative disc disease of the lumbar spine (L2 through S1); status-post laminectomy and fusion in 2009; status-post redo fusion L4-S1 in August 2011; status-post redo fusion L3-4 in June 2014; degenerative disc disease of the cervical spine at C6-7 as of March 2014; status post right total knee replacement in February 2013; and status-post right knee revision surgery in August 2013.

(Id.). At step three, the ALJ determined that Plaintiff's impairments did not meet or equal a Listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 27). Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[2] to perform sedentary work with the following limitations:

> [Plaintiff] could occasionally climb stairs; could not climb ladders, ropes or scaffolds; could occasionally bend, balance, stoop, kneel, crouch and crawl; could occasionally reach overhead with the bilateral upper extremities; could not work at unprotected heights, around dangerous or fast-moving machinery, and should avoid vibrating machinery.

---

[2] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

3

(AR 28).

At step four, the ALJ determined that Plaintiff was not able to perform his past relevant work as an "HVAC Installer" and a "Building Inspector." (AR 33). Relying on the VE's testimony at step five, the ALJ found that Plaintiff, with his age, education, work experience, and RFC, could perform the following representative jobs existing in significant numbers in the national economy: Telephone Information Clerk (Dictionary of Occupational Titles ("DOT") 237.367-046) and Lens Inserter (DOT 713.687-026). (AR 34). Accordingly, the ALJ concluded that Plaintiff "was not disabled . . . at any time from October 9, 2009, his alleged onset date, through December 31, 2014, the date last insured." (AR 35).

On October 20, 2016, the Appeals Council denied Plaintiff's request to review the ALJ's Decision. (AR 1-3, 18-19). The ALJ's Decision then became the Commissioner's final decision, allowing this Court to review it. See 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This Court reviews the Administration's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence

4

that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**PLAINTIFF'S CONTENTIONS**

Plaintiff raises two grounds for relief. Plaintiff contends that the ALJ erred in (1) relying on the VE's testimony that conflicts with the Occupational Outlook Handbook ("OOH"). (Joint Stip. at 5-9, 11-12); and (2) rejecting Plaintiff's testimony. (Id. at 12-19, 27-29).

**DISCUSSION**

After considering the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material legal error.[3]

//
//
//

---

[3] The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (an ALJ's decision will not be reversed for errors that are harmless).

## A. Plaintiff Waived The Issue Of Whether A Conflict Exists Between The VE's Testimony And The Occupational Outlook Handbook

Plaintiff contends that the ALJ erred in relying on the VE's testimony to find that Plaintiff could perform the occupations of Telephone Information Clerk (DOT 237.367-046) and Lens Inserter (DOT 713.687-026) because the ALJ failed to reconcile a conflict between the VE's testimony and the corresponding job classifications for these positions in the Occupational Outlook Handbook ("OOH"), an occupational information resource published by the Bureau of Labor Statistics. (Joint Stip. at 5-9). Specifically, Plaintiff asserts that the OOH's job classifications corresponding to telephone information clerk and lens inserter – "receptionists and information clerks" and "production workers, all other," respectively – require a high school diploma or equivalent. However, the ALJ directed the VE to assume an individual with an eleventh grade education in determining whether there were jobs in the national economy that Plaintiff could perform. (Id.; AR 72).

Plaintiff also claims that he did not waive this issue by failing to raise it before the ALJ because the OOH, like the DOT, is designated as a source of administrative notice, making it one of the Commissioner's own resources. (Joint Stip. at 8; see 20 C.F.R. § 404.1566(d)(5)). Therefore, Plaintiff contends that conflicts between the VE's testimony and the OOH, as with the DOT, should not have to be raised before the ALJ to be preserved on review in this Court. (Joint Stip. at 8-9).

The Ninth Circuit has recently held that conflicts with the OOH are waived if not raised in the administrative proceedings. In Shaibi v. Berryhill, 870 F.3d 874 (9th Cir. 2017), the plaintiff argued, for the first time before the district court, that the ALJ erred in crediting the VE's testimony about the number of existing jobs in the national economy for certain representative occupations because the VE's numbers were contradicted by the OOH and another resource, the County Business Patterns ("CBP"). Id. at 881. The Court held that "when a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency, the claimant waives such a challenge on appeal, at least when that claimant is represented by counsel." Id. The court noted that its "holding encompasses challenges based on an alleged conflict with alternative job numbers gleaned from the CBP or the OOH." Id. at 881. The court also noted that its holding rested in part on Meanel v. Apfel, 172 F.3d 1111 (9th Cir. 1999), which held that claimants represented by counsel "must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." Shaibi, 870 F.3d at 881 (quoting Meanel, 172 F.3d at 1115). The decision in Meanel was based on "the fundamental principle that an agency, its experts, and its administrative law judges are better positioned to weigh conflicting evidence than a reviewing court." Id. at 881-82. Finally, the Court, in Shaibi, pointed out that while an ALJ is required to resolve conflicts with the DOT, there was no authority requiring an ALJ to do the same with the OOH. Id. at 882.

Here, Plaintiff was represented by counsel and did not raise the OOH conflict issue during administrative proceedings. Defendant contends, therefore, that Shaibi "forecloses Plaintiff's OOH conflict arguments." (Joint Stip. at 10). Plaintiff argues that Shaibi is distinguishable because it concerned a conflict in estimates of job numbers and "does not dispose of the proposition that the ALJ must resolve conflicts between the [VE] testimony and the education and skill level required of the identified work." (Joint Stip. at 11-12). According to Plaintiff, Shaibi left the door open to permit this further conflict with the OOH and the [VE] testimony." (Id. at 12). The Court disagrees.

As set forth in Shaibi, although an ALJ is required to investigate and resolve conflicts between the VE's testimony and the DOT, even if the claimant does not raise the issue, there is no authority requiring the ALJ to do so for conflicts between the VE's testimony and the OOH. Shaibi, 870 F.3d at 882; see SSR 00-4p (adjudicators must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs ... and information in the [DOT], including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)").

Plaintiff contends that the Commissioner's ruling on this point (SSR 004p) "does not state that the ALJ may ignore the OOH," nor does it "preclude a claimant from comparing the testimony of the [VE] to the [OOH] []or relieve the ALJ of the obligation to resolve facial, direct, and obvious conflicts." (Joint Stip. at 9) (citing Taylor v.

Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1235 (9th Cir. 2011). However, Taylor involved the ALJ's failure to ask the VE whether her testimony conflicted with the DOT and does not stand for the broad proposition that the ALJ must resolve all conflicts between the VE's testimony and the OOH. Contrary to Plaintiff's argument, an ALJ simply has no independent obligation to investigate or resolve conflicts with the OOH, or with any resource other than the DOT (and its companion, the SCO). District courts in this circuit have rejected arguments to the contrary. See, e.g., Gandara v. Berryhill, 2017 WL 4181091, at *4 (E.D. Cal. Sept. 20, 2017)("plaintiff fails to provide authority for the proposition that an ALJ must *sua sponte* identify and take administrative notice of the educational requirements in the OOH, compare them with the VE's hearing testimony, and determine any inconsistencies."); Paris v. Berryhill, 2017 WL 4181093, at *4 (E.D. Cal. Sept. 20, 2017) ("the Ninth Circuit has rejected plaintiff's contention that the 'OOH stands on the same footing as the DOT.'"); Meza v. Berryhill, 2017 WL 3298461, at *8 (C.D. Cal. Aug. 2, 2017) (the ALJ was not required to resolve any conflicts with the OOH); Palomino v. Colvin, 2015 WL 2409881, at *6 (C.D. Cal. May 20, 2015) (plaintiff has cited no authority for the proposition that the ALJ is bound by the OOH).

The Court finds that Plaintiff has waived this claim by failing to raise it during administrative proceedings, and therefore remand is not warranted on this issue.[4]

---

[4] Even if the OOH was binding on the ALJ, Plaintiff fails to demonstrate that the VE's testimony was in fact inconsistent with the OOH. Plaintiff points out that according to the OOH, the occupation of Telephone Information Clerk belongs to the occupational group of

**B.   The ALJ Did Not Err In Evaluating Plaintiff's Credibility**

An ALJ's assessment of a claimant's credibility is entitled to "great weight." See Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). In order to determine whether a claimant's testimony is credible, the ALJ engages in a two-step analysis. Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014).

First, the claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A)(1988)). In producing evidence of the underlying impairment, "the claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). Instead, the claimant

---

receptionists. (Joint Stip at 7). The OOH states that receptionists "typically need a high school diploma or equivalent." Id. It does not state that a high school diploma is *required*. See George v. Berryhill, 2017 WL 1709599 at *14 (C.D. Cal. Apr. 30, 2017) (the OOH descriptions describing an occupation as "usual[ly]" or "typical[ly]" requiring a high school diploma allow for less education). Plaintiff also fails to explain how his educational level or abilities are inconsistent with the occupations identified by the VE as defined by the DOT.

"need only show that [the impairment] could reasonably have caused some degree of the symptom." Id.

Second, once the claimant has produced the requisite objective medical evidence, the "ALJ may reject the claimant's testimony regarding the severity of her symptoms." Id. at 1284. Absent affirmative evidence of malingering, however, the ALJ may reject a plaintiff's testimony only "by offering specific, clear and convincing reasons for doing so." Id. In assessing a claimant's alleged symptoms, an ALJ may consider the following:

> (1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears to be less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

Id. An ALJ may also consider "the claimant's work record and observations of treating and examining physicians and other third parties." Id.

Here, the ALJ examined the Administrative Record, heard testimony from Plaintiff, and determined that Plaintiff had produced objective medical evidence of underlying impairments that "could reasonably be expected to cause some of the alleged symptoms." (AR 29). However, the ALJ concluded that Plaintiff's "statements

concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Id.).

Plaintiff contends that the ALJ did not give clear and convincing reasons for discounting his credibility. He challenges, for example, the ALJ's reliance on evidence that Plaintiff experienced some improvement in late 2009 and early 2010, and expressed a desire to return to work at the time, (Joint Stip. at 16-17), claiming that, despite this evidence, he continued to experience pain and rely on pain medication, never returned to work, and later underwent further surgical procedures between 2011 and 2014. (Id.). Plaintiff also claims that the ALJ took certain statements in the record out of context, such as Plaintiff's testimony, at the hearing, that he could not "do anything," which the ALJ partly relied on to find that Plaintiff had exaggerated his limitations. (Id. at 19). Plaintiff also avers that while certain treatment notes indicate that he was doing "pretty well" with pain management, the same notes also report a high pain rating. (Id. at 17-18). Plaintiff asserts that his reported activities of daily living were more limited than the ALJ indicated, and that the ALJ's reliance on Plaintiff's report of these activities in August 2010 fails to account for Plaintiff's worsened condition in the following years. (Id. at 18). Finally, Plaintiff contends that a lack of objective evidence "does not provide an independent, clear and convincing basis for rejecting pain and limitation testimony." (Id. at 17) (citing Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005)).

After consideration of the record as a whole, the Court finds that the ALJ provided specific, clear and convincing reasons for deeming Plaintiff's testimony about the limiting effects of his symptoms less than fully credible. First, the ALJ reasonably determined that Plaintiff's subjective symptoms lacked support in the objective medical record. (Id.). While such evidence cannot be the "sole ground" for rejecting subjective pain testimony, it "is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Rollins v. Massanari, 261 F.3d 853, 856, 857 (9th Cir. 2001). Here, the ALJ properly found that Plaintiff's radiographic evidence did not support the severity of his subjective complaints, noting that there were only "mild abnormalities" shown in lumbar spine x-ray examinations in November 2008 and July 2009 and MRI examinations in September 2009 and February 2010. (Id.; see AR 496-97, 501-02, 503, 505). The ALJ also noted few abnormalities in a January 2011 MRI when Plaintiff went to an emergency room complaining of back pain, (AR 29, 521-23, 528-29), as well as lumbar spine x-rays in April 2011 that revealed only mild degenerative changes, and in February 2014, showing "no acute abnormality." (AR 29-30, 751, 814). Moreover, as discussed below, this was not the sole legally sufficient reason for discounting Plaintiff's credibility. See Robbins v. Social Security Administration, 466 F.3d 880, 883 (9th Cir. 2006) (ALJ may cite the medical record in concert with other factors in assessing a claimant's credibility).

Second, the ALJ also reasonably found that evidence of improvement in Plaintiff's condition partly undermined the alleged severity of Plaintiff's pain and limitations. (AR 29-30). For instance, the ALJ noted that Plaintiff's condition improved after he

13

underwent a lumbar laminectomy procedure on October 19, 2009, despite Plaintiff's testimony to the contrary. (AR 29). A treatment note on October 29, 2009 indicates that Plaintiff experienced "significant improvement in his radicular symptoms" and that he requested a release to return to work after the procedure. (AR 29, 469). The treating physician provided the release, while recommending that Plaintiff avoid bending, twisting, lifting and climbing ladders. (Id.). The ALJ also noted that over the next few months, Plaintiff reported having "no new complaints," "overall dramatic relief of his preoperative symptoms," and "complete resolution of his left lower extremity pain," though he complained of ongoing pain in his right buttock, thigh and calf in January 2010. (AR 29, 465, 467, 468). The ALJ also reviewed records indicating that Plaintiff's knee was improving after his knee surgery in August 2013, and that his medications were also helping. (AR 30, 859). In subsequent examinations, Plaintiff continued to report doing well, and stated that he was pleased with the results of his surgeries and wished to reduce his pain medications. (AR 30, 825, 839, 841, 853, 857).

Notwithstanding Plaintiff's occasional improvement and management of symptoms, however, the ALJ recognized that Plaintiff continued to experience pain, undergo treatment, and suffer occasional periods when he was more limited and required surgery or time for recovery. The ALJ appropriately relied on such evidence in the context of the record as a whole to determine that Plaintiff's conditions were not as debilitating or consistently limiting as Plaintiff alleged. This was a clear and convincing reason to discount Plaintiff's credibility.

Third, the ALJ found that – based on a variety of Plaintiff's statements and not just one particular statement that may have been taken out of context - Plaintiff exaggerated his symptoms and limitations. (AR 31). For example, Plaintiff asserted that he could not do "anything," that his pain was an "11" on a scale of zero to ten, and that it took him ten or twenty minutes to walk ten to fifteen yards, among other claims. (AR 31, 86, 389). The ALJ reasonably concluded that such claims were "simply not borne out by the record and therefore cannot be considered credible." (AR 31). This was a clear and convincing reason to discount Plaintiff's credibility.

The ALJ also reasonably determined that Plaintiff's activities of daily living did not support his allegations of total disability. (AR 29-30). An ALJ may rely on a claimant's activities of daily living to show not only that Plaintiff is capable of performing work in accordance with the RFC determination, but also to undermine Plaintiff's credibility when such activities are inconsistent with Plaintiff's subjective allegations of disability. See Molina, 674 F.3d at 1112–13; Valentine v. Astrue, 574 F.3d 685, 693 (9th Cir. 2009). Here, the ALJ found that Plaintiff's reported activities of daily living showed that "he is not as limited as alleged and that he appears to retain the capacity to perform activities consistent with sedentary level work." (AR 31). The ALJ pointed out that Plaintiff reported he could lift light objects such as blankets, carry groceries from the car to the house, drive for one or two hours, and sweep, vacuum, or water his yard for about forty-five minutes, (AR

30-31, 390-91), acknowledging that while Plaintiff's "ability to engage in these activities does not necessarily establish an ability to obtain and maintain employment," (AR 31), his ability to perform the activities did not support the alleged severity of his limitations, and suggested that Plaintiff "retain[ed] the capacity to perform activities consistent with sedentary level work." (Id.). This was a clear and convincing reason to discount Plaintiff's credibility.

In addition, the ALJ addressed Plaintiff's use of an assistive device for walking. (AR 30). The ALJ observed that Plaintiff sometimes, but not always, used a cane or other assistive device and that his "gait was generally reported as not antalgic." (AR 30, 659, 663, 826, 830). The ALJ acknowledged that Plaintiff's treating physician helped Plaintiff obtain a power wheelchair or scooter in July 2011 because he was "unable to lift anything" and "unable to walk," but noted that this was "shortly before" Plaintiff's lumbar fusion and bone graft procedure in August 2011. (AR 30, 541, 568-69). The ALJ credited the testimony of Dr. Kendrick who testified that Plaintiff may have needed an assistive device for up to three months after surgery, but it was otherwise unnecessary. (AR 30, 49). The ALJ reasonably concluded that while Plaintiff "may have required a cane for a few months, he has not required an assistive device for any continuous 12-month period of time, and, as such, the need for an assistive device cannot be considered an ongoing necessity." (AR 30).

The reasons given by the ALJ for discounting Plaintiff's credibility sufficiently allow the Court to find that the ALJ provided specific, clear and convincing reasons for rejecting Plaintiff's subjective statements. See <u>Lasich v. Astrue</u>, 252 Fed.App'x 823, 825 (9th Cir. 2007) (Court will defer to ALJ's credibility determination when the proper process is used and proper reasons for the decision are provided). Where the ALJ has made specific findings justifying a decision to disbelieve Plaintiff's allegations and those findings are supported by substantial evidence in the record, "we may not engage in second guessing." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002).

**CONCLUSION**

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: December 21, 2017.

                                /s/
                      ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE